ORIGINAL                                                                                                   ORIGINAL

Robert J. Beles Bar No. 41993
Anne C. Beles Bar No. 200276
Law Offices of Beles & Beles
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel No. (510) 836-0100
Fax. No. (510) 832-3690

Attorneys for *Defendant*
ALEX GONZALEZ

United States District Court
Northern District of California
Oakland Courthouse

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　*Plaintiff*,<br>vs.<br><br>ALEX GONZALEZ,<br><br>　　　　*Defendant*. | No. **4:13-CR-00098-PJH**<br><br>SENTENCING MEMORANDUM; EXHIBITS "A" THROUGH "G"<br><br>Date:　　　　Wednesday, May 28, 2014<br>Time:　　　　2:30 pm<br>Courtroom:　3, Hon Phyllis J. Hamilton, Judge<br><br>*Speedy Trial Act Excludable Time: 18 U.S.C. 3161(h)(1)(F)* |

**MEMORANDUM IN SUPPORT OF MOTION
TO CONTINUE RELEASE PENDING SENTENCING**

**1. Final presentence report**

**a. Defendant agrees with the presentence report that the 5 level increase for distributing images to minors should not be counted.**

　　This is an open plea to the court to one count of distribution of child pornography under 18 U.S.C. section 2252(a)(2), and one count of possession of child pornography under 18 U.S.C. section 2252(a)(4)(B), Class C Felony. The sentence is totally at the discretion of the court.

　　The report calculates the offense level as 37, but recommends a variance of the guideline sentence of 210- 262 months to a recommended sentence of 132 months. The report notes that the high guideline sentence is due to a 5 level increase for distributing images to minors under section 2G2.2(b)(3)(C) and suggests that it should not be counted.

　　Defendant agrees with the probation officer that 210-262 months is far too high a sentence for this offense, but also notes that there is very little evidence discussed in the

presentence report that would support a finding that defendant actually distributed images of R.A. to other minors. Paragraph 11 of the presentence report states that defendant "uploaded nude images of R.A. onto Facebook. He then 'tagged' the photos with R.A.'s name to ensure that all of her Facebook 'friends' would be notified of the images." The report does not state that R.A.'s Facebook friends were minors or contain any other information of their ages. There is no information that a specific minor was interviewed, his or her age verified, and that the minor admitted to receiving nude images of R.A. from defendant. The probation officer apparently assumes that because R.A. is a minor, her Facebook friends would have been minors as well, but there is no information in the report as to who the friends were or what their ages were. Unless there is some specific information supporting the five level increase for distribution to minors, it would not apply anyway.

### b. The presentence report overstates the offense level by grouping of counts that are factually unrelated.

The presentence report has overstated the offense level by taking the distribution count as the base offense level and increasing it by factors relating both to the images of R.A. that were distributed and the incidental child pornography that defendant possessed.

The presentence report uses the base offense level of 22 for distribution of child pornography (presentence report, ¶ 32) and increases it by the following adjustments:

| | |
|---|---:|
| base offense level | 22 |
| adjustments: | |
| Section 2G2.2(b)(2) – prepubescent minors | +2 |
| Section 2G2.2(b)(3)(C) – material distributed to minors | +5 |
| Section 2G2.2(b)(4) – sadistic or masochistic content | +4 |
| Section 2G2.2(b)(6) – use of a computer | +2 |
| Section 2G2.2(b)(7)(D) – 600 or more images | +5 |
| Section 3E1.1(a) and (b) – acceptance of responsibility | -3 |
| Total offense level | 37 |

As discussed above, the presentence report recommends that the distribution to minors factor not be counted, resulting in an offense level of 32.

The material defendant distributed, pictures of R.A., did not involve a prepubescent minor, and none of R.A.'s images involved sadistic or masochistic content. The only images that

had such conduct were ones that he incidentally possessed that had nothing to do with R.A.

Although the report's calculation is literally correct under the guideline's "grouping" rules (see section 31, presentence report) in this case, treating the distribution and the possession counts as closely related offenses overstates the offense level because the two counts, distribution of child pornography and possession of child pornography, really do not have much to do with each other in this particular case.

The "grouping" rules treat the child pornography distributed and possessed as if it were an amount of contraband and prescribe a calculation of the offense level based on a combined amount. This would make sense in the typical child pornography case in which a defendant collects child pornography on the internet and makes some of his collection available for further distribution in the process. Here, however, defendant engaged in *two totally different courses of conduct*. The distribution count relates to an on-line relationship that defendant had with R.A. in which she voluntarily sent him nude images of herself. The relationship went sour and defendant then posted R.A.'s nude images on Facebook out of anger. The possession count includes R.A.'s nude images, but also a number of other images that defendant received that had nothing to do with R.A. Under the specific facts here, it overstates the offenses to group them. If the offenses are not grouped, then under Section 3D1.4, the guidelines would only require a two level increase for the possession count rather than a six level increase for the prepubescent and sadistic / masochistic factors. Thus, grouping the offenses overstates the offense level by 4.

The following shows how the offense level would be calculated if the two counts were not grouped and distribution was considered the base offense.

| | |
|---|---|
| base offense level | 22 |
| adjustments: | |
|     Section 2G2.2(b)(3)(C) – material distributed to minors | +5 |
|     Section 2G2.2(b)(6) – use of a computer | +2 |
|     Section 2G2.2(b)(7)(D) – 600 or more images | +5 |
|     Section 3D1.4 – multiple offenses | +2 |
|     Section 3E1.1(a) and (b) – acceptance of responsibility | -3 |
| Total offense level | 33 |

Following the presentence report recommendation that the distribution to minors factor not be counted, the offense level would be 28. A level 28 with a criminal history of 1 results in a guideline sentence of 78-97 months, considerably less than the guideline sentence of 210-262 months, or the recommended variance of 132 months in the presentence report.

The following shows how the offense level would be calculated if the two counts were not grouped and possession was considered the base offense.

| | |
|---|---|
| base offense level | 18 |
| adjustments: | |
| Section 2G2.2(b)(2) – prepubescent minors | +2 |
| Section 2G2.2(b)(4) – sadistic or masochistic content | +4 |
| Section 2G2.2(b)(6) – use of a computer | +2 |
| Section 2G2.2(b)(7)(D) – 600 or more images | +5 |
| Section 3D1.4 – multiple offenses | +2 |
| Section 3E1.1(a) and (b) – acceptance of responsibility | -3 |
| Total offense level | 30 |

This calculation comes out two levels higher. But this also overstates the offense since the primary offense is really the conduct regarding R.A. and the incidental possession of child pornography, which involves hypothetical or abstract victims, is really secondary to defendant's conduct regarding R.A.

### 2. Low recidivism risk assessment

Dr. Amber Samaroo, a psychologist, performed a Forensic Psycho-Sexual Risk Assessment of defendant. The Static 99 test results placed defendant at 3, in the "medium to low" range of risk to re-offend, which worked out "a 10% risk to recidivate within 5 years, a 14% risk of recidivism within 10 years, and 18% risk within 15 years." Dr. Samroo noted that his score was a 3 because of his young age and the fact that he had never lived with another person in a loving relationship, and that he would have otherwise scored a "1", which would place him in the "lower end of the low risk level." (Dr. Samaroo's analysis, p. 5 ¶1.)

The Adult Sex Offender Risk Assessment Schedule placed defendant as an 11, which was at the high end of the low risk category, but Dr. Samaroo emphasized that this test wss not predictive of the chance of recidivism in the future. The score resulted from combining several

positive factors (a life which has been free of behavioral problems, a lack of criminal history, accepting full responsibility for his behavior, and a supportive family unit on the one hand) and the fact that the actions with the victim occurred on a number of occasions.

Dr. Samaroo further concluded that the lack of prior criminal history and admission of responsibility were additional factors showing a low risk for recidivism (Dr. Samaroo analysis, p. 7, ¶ 3 and 4.)

Dr. Samaroo's analysis finally concludes that defendant's core difficulties are "poor anger management" and "poor social skills." factors that can be addressed in an "outpatient therapeutic environment." (Dr. Samaroo analysis, p. 8, "Integration of Findings".)

### 3. Section 3553(a) sentencing factors

#### a. The factors

The statutory sentencing factors under section 3553 (a) are extensively discussed in *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), an appeal from a sentencing occurring in October of 2007 and, more recently, in *United States v. Edwards* (9th Cir. February 16, 2010). Autery was a child pornography possession case in which the Ninth Circuit upheld a sentence of straight probation over a guideline sentence of 41-51 months; *Edwards,* a bank fraud case in which the Ninth Circuit followed *Autery* and imposed a sentence of straight probation rather than a guideline sentence of 27-33 months. The 3553 (a) factors are as follows:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [and recommended

by the Guidelines] . . . ;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

### b. Nature and circumstances of the offense.

Paragraph 17 of the presentence report states that defendant told the agents that he was seeking pictures of girls that were around 14-15 years old. Defendant had also kept 174 videos and 1354 images of R.A., who is 15 years old. Defendant told Dr. Samaroo that the images of younger girls that he had on his computer had been sent to him in response to his posting R.A.'s images on the internet and he had not actively sought these out.

This is not a typical child pornography possession case where a person deliberately sets out to collect images of pre-pubescent minors, or even where the offender's object is to amass a collection of child pornography. Given his young age of 21 (emotionally even younger) and the fact that the primary conduct involves R.A., a 14 year old girl, defendant's incidental possession of child pornography does not imply that defendant poses a risk to young children. Dr. Samaroo's risk assessment report (discussed below) states that defendant did not present as a "predatory person who generally engages individuals younger than himself for sexual gratification." (Samaroo report, p. 6). Rather, defendant appears to be an immature 21 year old who still acts as if he was a teenager.

### c. History and characteristics of the defendant

Defendant completely lacks any criminal history. This is similar to *Autery* in which defendant similarly lacked any criminal history.

In *Autery*, the government had argued that the sentencing court could not consider a lack of criminal history since it was already part of the guidelines Criminal History calculation. The Ninth Circuit disagreed, noting that a Criminal History of 1 includes both individuals with minor criminal history and those with none at all, and it was thus proper for the sentencing court to consider the complete lack of a criminal history as a mitigating factor. The Ninth

Circuit noted that the Fifth Circuit had reached the same conclusion, upholding a sentence of straight probation for a defendant with no criminal history convicted of possessing defendant convicted of possessing "hundreds of hardcore child pornography images." *United States v. Autery*, 555 F.3d at 873, citing *United States v. Rowan*, 530 F.3d 379, 381 (5th Cir. 2008.) T

The Ninth Circuit also upheld the district court's reliance on Autery's positive psychological characteristics, similar to defendant here, such as "no history of substance abuse, no 'interpersonal instability' nor 'sociopathic or criminalistic attitudes,' his motivation and intelligence, support of his wife and children" and that he did not fit the profile of a pedophile. *United States v. Autery*, 555 F.3d at 875. The Ninth Circuit found the district court's finding reasonable that each of those attributes increased the likelihood that Autery can again become a productive, non-threatening member of free society, thus making more severe punishment less appropriate than if Autery lacked those characteristics. As discussed above, Dr. Samaroo similarly found that defendant had a low risk of recidivism, no history of substance abuse, and prior conduct free of behavioral problems.

Defendant has been in therapy with Dr. Kagel for approximately 25 sessions every other week beginning on June 16, 2013. Our information is that the sessions have dealt with latent anger resulting from when defendant was molested as a child. Dr. Kagel was quite shocked at the federal guideline of 210-263 months and the recommended sentence of 132 months. He believes that the defendant's problems could be dealt with in outpatient therapy.

### d. Seriousness of the Offense, Respect for the Law, Just Punishment, Deterrence, and Need to Protect the Public.

The Ninth Circuit in *Autery* found that the district court adequately considered this factor by imposing the maximum term of probation because of the seriousness of the offense, plus onerous conditions of probation, which included registration as a sex offender, psychotherapy, a five year restriction from traveling outside of the state, and a ban from using any computer or device with internet capability, such as a cell phone, outside of work without prior approval. *United States v. Autery*, 555 F.3d at 875.

As in *Autery*, defendant's low risk of reoffending, his lack of any criminal history, young

age, lack of behavioral problems other than this one offense, lack of substance abuse, a lack of criminal history, accepting full responsibility for his behavior, and a supportive family unit all suggest that factors 2(A) through (C) could all be adequately addressed with a sentence that is much lower than the guideline range.

Defendant understands R.A.'s and her family's concerns, but this does not translate to a number of months for sentencing purposes.

### e. Unwarranted Sentencing Disparities

The Ninth Circuit noted that the district court's sentence "depended heavily on Autery's dissimilarity with others convicted of the same offense. According to the district court, Autery did not 'fit the profile of a pedophile.' He is in many ways, the court found, qualitatively different from the 'hundreds and hundreds' of others the court had encountered who had engaged in similar behavior." *United States v. Autery*, 555 F.3d at 876.

Defendant is even less like the classic pedophile who collects child pornography than the defendant in *Autery*.

Typical cases involving an adult who engages in online dating with a teenage girl, receives nude images, and in anger, later posts them have resulted in sentencing ranges of 48-84 months, far less than the 132 month sentence the presentence report recommends. Defendants with Mr. Gonzalez' lack of criminal history, low recidivism risk, and other factors discussed above are not receiving sentences of anything close to 132 months and that a more significant variance would be appropriate to eliminate probable sentence disparities.

### f. Prospect for Rehabilitation / Need for Treatment

A court cannot impose a prison sentence on the theory that a defendant will be rehabilitated by prison or by treatment programs available in prison. *United States v. Grant*, 664 F.3d 276, 281 (9th Cir. 2011), overruling *United States v. Duran*, 37 F.3d 557 (9th Cir. 1994) and citing 18 U.S.C. section 3582(a) (" imprisonment is not an appropriate means of promoting correction and rehabilitation'), and *Tapia v. United States*, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011), *United States v. Autery*, 555 F.3d at 877.

Both Dr. Kagel and Dr. Samaroo found that defendant could be successfully treated on

ORIGINAL                                                                                              ORIGINAL

an outpatient basis.  Dr. Samaroo has recommended that if incarcerated, defendant be placed in an institution with a sex offender treatment program.  Dr. Samaroo did not find that defendant would be better treated by an institutional treatment program than by outpatient treatment.

### 4. Conclusion

We submit that a variance of the guideline sentence of 78-97 months to 60 months would be appropriate.  What we have here is a confused young man who realizes that he has done serious damage to another person and is still sorting out why he did this and the totality of the pain that he caused the victim and her family.  He is not asking for a break, but simply asking the court to impose an appropriate sentence.

Dated:  Oakland, California, Tuesday, May 20, 2014.

_____
Robert J. Beles
Attorney for *Defendant* A<small>LEX</small> G<small>ONZALEZ</small>