MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

RANDY LUSKEY (CABN 240915)
Assistant United States Attorney

  1301 Clay Street, Suite 340S
  Oakland, California 94612
  Telephone: (510) 637-3689
  Fax: (510) 637-3724
  E-Mail: randall.luskey@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. CR 13-0098 PJH |
| Plaintiff, | ) |
| v. | ) SENTENCING MEMORANDUM |
| ALEX GONZALEZ, | ) Hearing Date:  May 28, 2014 |
| Defendant. | ) Time:          2:30 p.m. |

**INTRODUCTION**

This is not your average child pornography case. The defendant, Alex Gonzalez, targeted a fifteen year-old high school student online; coerced her into taking graphic, nude photographs of herself; posted those photographs on Facebook and other websites with the victim's name, age, and phone number prominently displayed for all to see; traded those photographs over the Internet for other images and videos depicting minors as young as eight years old engaged in sexually explicit conduct; and, finally, made the vengeful, almost inhuman, decision to invite the victim's high school friends to view these nude photographs on Facebook. The victim's life will never be the same. The nightmares may

never go away. Her reputation and self-esteem have been forever tarnished. She has been forced to change schools. She has received phone calls from random strangers who viewed her nude photographs online. The defendant – and no one else – is responsible for this tragic set of circumstances. Alex Gonzalez ruined an innocent young woman's life with the swipe of a mouse and the click of a few buttons – all from the comfort of his own bedroom – and he should be severely punished for his actions.

On November 6, 2013, Gonzalez pleaded guilty to Counts One and Two of the Indictment, charging him with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). While this is clearly a case where the government could have charged the defendant with producing child pornography, in violation of 18 U.S.C. § 2251(a), thereby subjecting the defendant to a mandatory minimum sentence of 180 months imprisonment, the government chose not to bring such a charge.

Considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully requests that the Court sentence Gonzalez to a sentence of <u>168 months</u> in custody – representing a significant downward variance below the low-end of the advisory level set forth in the Sentencing Guidelines and below the 180 month mandatory minimum for production of child pornography – with a ten year period of supervised release, and a $200 special assessment. The government submits that a 168 month term of imprisonment followed by a ten year term of supervised release is not greater than necessary to reflect the seriousness of the offense, afford adequate deterrence, and protect the public, consistent with 18 U.S.C. § 3553(a). The Court should take this opportunity to send a clear message to future cyber-stalkers and online sexual predators that this type of behavior will not be tolerated. A sentence of 14 years accomplishes this task.

**FACTUAL BACKGROUND**

The government agrees with and incorporates by reference the facts as set forth in the Presentence Investigation Report ("PSR"). PSR ¶¶ 7-22. More specifically:

In January 2013, the FBI was contacted by D.A., the mother of the minor victim R.A., who was a fifteen year old female. *Id*. at ¶ 7. D.A. informed agents that she had conducted a Google search of her daughter's name and had observed several explicit images of her daughter on multiple internet websites. *Id*. The FBI interviewed R.A., who explained that, in the summer of 2012, she met the defendant on

Omegle.com, a video chat website. *Id*. at ¶ 8. The defendant told R.A. that he lived and went to college in New Jersey. From the summer of 2012 through December 2012, R.A. and the defendant communicated via the Internet on numerous occasions. *Id*. at ¶ 9. During these communications, the defendant instructed R.A. to take nude photographs of herself, including her genitalia, and to send them to the defendant using the KIK application for Apple products. *Id*. R.A. obliged, and also provided the defendant with her personal identifying information. *Id*. The images that R.A. sent to the defendant included the following:

- An image file depicting the victim lying face down in a bathtub. Her legs are spread and her buttocks is raised above the water.
- An image file depicting the victim lying on her back in a bathtub. The photograph is a close-up of the victim's bare breast protruding from the water.
- An image file of the victim on her knees. She is nude except for a pair of panties that are pulled down around her knees. The photograph is taken from behind.
- An image file of the victim with her legs spread wide open, fully displaying her vagina. Her fingers are resting above her pubic area.

*Id*. at ¶ 11. After R.A. told the defendant that she no longer wished to communicate with him online, the defendant began an online campaign to punish R.A. by posting her nude photographs to the following web sites:

### iMGSRC.ru

In December 2012, R.A. discovered that the nude photographs that she had previously provided to the defendant had been posted on iMGSRC.ru, a free photo-sharing website hosted in Russia, by the defendant under the username "camc831." *Id*. at ¶ 13. R.A.'s name, age, and phone number were also listed along with the images. *Id*. According to R.A.'s mother, random strangers, who had seen the nude photos of R.A., attempted to contact R.A. via the Internet or by mobile phone until R.A. changed her phone number. *Id*.

### Facebook

The defendant then created a "Cam Young" Facebook account to distribute the nude images of R.A. to her friends. *Id*. at ¶ 11. According to Facebook records obtained from a search warrant, on or about November 2, 2012, the defendant opened a Facebook account under the user name "Cam Young" from the same IP address used to access his "Alex Gonzalez" Facebook account. *Id*.

  Posing as "Cam Young," a soon-to-be transfer student at R.A.'s high school, the defendant began "friending" all of R.A.'s Facebook friends. *Id*. A review of the defendant's Facebook messages shows that the defendant encouraged his new "friends" to download the KIK application, the application that R.A used to transmit images to the defendant. For example, on December 12, 2012, the defendant sent a message to a friend of R.A.'s: "Hi cutie : ] do you have a kik? Or would you get one? I just got a new one." The defendant than began requesting that his new "friends" encourage R.A. to accept his "friend request." For example, on or about December 4, 2012, he messaged a friend of R.A.: "Hi, I see you are friends with [R.A.]. She messaged me on here but I can't reply because we're not friends. Could you please let her know that we have to be friends in order for me to be able to message back? Thanks."

  Sometime in December 2012, R.A. accepted the "friend request" from "Cam Young," unbeknownst to her that it was Gonzalez. *Id*. According to R.A., she accepted the "friend request" because "Cam Young" was Facebook "friends" with so many of her "friends," even though she had never met "Cam Young" in person. On December 13, 2012, Gonzalez, posing as "Cam Young," uploaded the nude images of R.A. onto Facebook and "tagged" the photos with R.A.'s Facebook name so that all of her high school classmates and Facebook friends would be immediately and openly notified that the nude images were on Facebook. *Id*.

  On January 3, 2013, a friend of R.A.'s sent a Facebook message to the defendant and told him that "it was gross what you posted. And I've met [R.A.]." *Id*. at ¶ 12. Gonzalez responded: "So what? She should close her legs then." *Id*. The friend later added, "and that was not a nice thing to do." Gonzalez then replied that R.A. was a "bitch" and a "whore" and added that "maybe she will stop whoring." *Id*.

  **xHamster.com**

  On January 17, 2013, D.A. contacted the FBI again, to advise them that more photos of R.A. were now posted on the website xhamster.com by user "camyoung831." *Id*. at ¶ 14. Xhamster.com is a free-access adult pornography website that allows users to upload and maintain photo and video files. *Id*. An FBI agent, in an undercover capacity, visited xHamster.com and viewed the profile of "camyoung831." *Id*. On this profile, the FBI agent identified approximately 125 image files of R.A. *Id*. Some of these images depicted R.A. as partially or completely nude, and some displayed her genitalia.

*Id*. The agent then sent a message to "camyoung831" requesting more photos of R.A. *Id*. "Camyoung831" replied, "I have one more album of her in the bath tub." *Id*.

### The Search of the Defendant's Home

On February 5, 2013, the FBI executed a search warrant at the offender's home. *Id*. at ¶ 16. Agents seized an HP G72 laptop computer, a USB thumb drive and a cellular phone. *Id*. When interviewed by agents, the defendant admitted to communicating with R.A. for several months. *Id*. He acknowledged receiving the explicit photos from her and saving them to his computer. *Id*. He told the agents that he posted the photographs because he wanted people to see "how she really was." *Id*. He informed the agents that he removed the photos from one of the sites for approximately one month before re-posting them. *Id*. He told the agents that he removed them because he was concerned about his actions but that he re-posted them because she was a "bitch." *Id*. He further told the agents that he uploaded the photos to imgsrc because he wanted people to contact R.A. so that she would know her photos were online. *Id*. at ¶ 17.

Gonzalez admitted that he was interested in trading his photos for photos of girls that were around 14 or 15 years old. *Id*. He estimated that the youngest children that he received images of was approximately 8 years old. *Id*. He saved hundreds of sexually explicit images of girls between the ages of 8 and 15. *Id*.

A forensic review was conducted on the defendant's cellular phone. *Id*. at ¶ 18. Agents noted approximately 37 chat conversations between the defendant and unknown individuals, using the KIK application. *Id*. One of the conversations involves the defendant soliciting pictures from a 14 year old female. *Id*. During the course of this conversation, the defendant says things like "send me your nudes," "Go take these pics that I tell you to and your video will be sent to you," and "Take the ass pics now." *Id*.

A forensic review of the defendant's computer revealed numerous videos and still images depicting child pornography. *Id*. at ¶ 19. The images depicted children engaged in sexually explicit conduct including the sexual abuse of children by adults, children engaged in sexual acts with animals (bestiality), or adults, children posing in sexually explicit poses, bondage (children tied up or bound

while being sexually abused), and helpless victims (toddlers being sexually abused). *Id.* A sampling of the material included the following:

- "a06.jpg" was an image file depicting a prepubescent female who is nude from the waist down. The female is using her fingers to spread her labia as what appears to be a cat licks inside her vagina.

- "Tw9Xs[1].jpg" is an image file depicting a prepubescent nude female with her wrists tied together above her head. The female's legs are tied back and her eyes are closed as an adult male pushes his erect penis inside the prepubescent female's vagina.

- "!!!_2006_Stephanie_3yo_relieving_loving_daddy_!!.mpg" is a video file depicting a nude female toddler lying on her back. An adult male holds the female down and forces his erect penis into the toddler's vagina repeatedly for several seconds and then ejaculates onto the toddler's torso.

*Id.* The images stored on the defendant's computer were primarily of females, who were approximately six to eleven years old. *Id.* at ¶ 20. There were some images that included children as young as two or three years of age. *Id.* The defendant is responsible for approximately 2,581 still images and 139 videos. *Id.*

In addition to the above-noted images, the forensic review also revealed still images and videos of R.A. on the computer. *Id.* at ¶ 21. There were approximately 174 videos and 1354 still images of R.A. *Id.* These images and videos depict R.A. in various stages of undress, including some nude photos. *Id.* In addition to the above-noted images, it appears that 157 videos were taken of R.A. without her knowledge. *Id.* at ¶ 22. The defendant was using the program Bandicam, which is a software program that allows the user to record images or videos that are appearing on his computer. *Id.* The defendant also attempted to save the victim's images to a Dropbox account, Motherless.com, and Mediafire. *Id.*

## ARGUMENT

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), this Court may consider any of the sentencing factors set forth in 18 U.S.C. § 3553(a) when imposing sentence, irrespective of the sentencing guidelines calculation applicable to the offense of conviction. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

**I.     The Applicable Guideline Range**

U.S. SENTENCING MEMORANDUM
CR 13-00098 PJH                                             6

The government agrees with the guideline calculations in the PSR, which sets forth a total offense level of 37, after application of specific offense characteristics for distribution to minors, use of a computer, sadistic conduct, possessing more than 600 images, and acceptance of responsibility. PSR ¶¶ 30-45. The government agrees that the defendant's criminal history points total zero, which results in a Criminal History Category of I. PSR ¶ 50. The suggested guidelines sentencing range for Offense Level 37 and a Criminal History Category of I is 210-262 months of imprisonment.

## II. Application Of The Factors In 18 U.S.C. § 3553(a) Demonstrates That A Sentence Of 168 Months Imprisonment And Ten Years Of Supervised Release Is Reasonable.

The statutory sentencing factors support the 168 month sentence, representing a downward variance, recommended by the government. The Probation Office recommends a 132 month sentence.

### A. The Nature of the Offense

The offense conduct in this case was categorically different than what the Court encounters in most child pornography distribution cases. In the typical case contemplated by the guideline range, law enforcement officers find a defendant sharing images and videos depicting child pornography on his computer. The defendant is often found sharing the images on some peer-to-peer online platform. In the vast majority of these cases, there is no contact between the defendant and the minor victims depicted in the videos or images.

This case is very different. Here, the defendant had direct contact with the 15 year-old victim, directing her how to send him graphic nude photographs, and secretly videotaping her every move. What's worse, after receiving those embarrassing and extremely private pictures from his underage victim, he broadcast them for the world to see, first on a Russian pornography site, then on Facebook, and then on a free access adult pornography site. Not only did the defendant make these images publicly available, he included the victim's true name, age, and phone number, ensuring that she would have to re-live the undeniable horror every time she received a harassing phone calls from the next sexual deviant who had viewed her naked pictures online. Worse still, the defendant then took the truly evil step of inviting R.A.'s high school classmates and other Facebook "friends" to come view these images on Facebook. The feeling that R.A must have experienced while walking the halls of her high school after this incident unfolded is something that no young child should ever have to endure. This

case represents cyber-stalking at its worst. While the offense conduct in this case was not "hands on," the scars are just as deep for the victim.

Moreover, this was clearly not the first time that the defendant had coerced minors into sending send him nude pictures. The cell phone search showed that the defendant had recently told another 14 year old girl to "send me your nudes," and to "go take these pics that I tell you to and your video will be sent to you," and "take the ass pics now." This was not an isolated offense. The defendant is a predator.

The seriousness of this offense conduct cannot be overemphasized in the modern Internet era. While sexual predators previously had to find ways to physically lure minors into meet-ups in order to fulfill their sexual fantasies, nowadays predators can coerce minors to engage in sexually explicit conduct behind closed doors, with the simple click of a button. It is a truly terrifying phenomenon given the vulnerability of young Internet users and the prevalence of web sites that facilitate anonymous discussions between strangers.

Even putting aside for the moment the defendant's tormenting of R.A., the defendant's possession of over 39,000 still images and 300 videos depicting minors engaging in heinous sexual conduct is worthy of a severe sentence in its own right. The content of the images and videos possessed and shared by the defendant are especially disturbing, admittedly qualifying for the most egregious sentencing enhancements. These images and videos involved children engaged in sexually explicit conduct including the sexual abuse of children by adults, children engaged in sexual acts with animals (beastiality) or adults, children posing in sexually explicit poses, children tied up or bound while being sexually abused, and toddlers being sexually abused.

The impact of the original crimes on the child victims in these photos and videos is undeniably terrible, and their victimization continues through the trading of images of their degradation and torture years later through networks of people who take perverse pleasure in watching the victimization of children. By seeking out and downloading child pornography, the defendant has helped to maintain and expand a marketplace for such images. So long as such a marketplace exists, pedophiles' interests will be fed and reinforced and more children will be victimized in order to satisfy those interests.

For this case, we received victim impact statements from approximately seven victims or parents.

U.S. SENTENCING MEMORANDUM
CR 13-00098 PJH                                8

A parent victim wrote, "My daughter and I live in constant fear that others will find out what has happened to her. We are both scarred for life. While I went to work, my ex-boyfriend took pictures of my daughter, posted them on the Internet, and molested her. I can't even imagine what was and still going through my daughter's mind, even after receiving two years of therapy. She will never be able to erase the memories of the abuse, pain, and suffering that she received. She was tortured by the man that she only wanted to be her daddy. . . . To make matters worse, once the pictures were posted on the Internet, they cannot be eliminated from others that have them or wherever he posted them. Even though this pedophile is in jail, he is not the only one that is now serving a life sentence."

A child victim wrote, "I know that my life will always be a roller coaster because of the 'public' nature of my own private hell. I live every day with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending." Every day, people are trading and sharing images of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain. My world came crashing down the day I learned that pictures of me being sexually abused had been circulated on the internet."

Another parent victim wrote, "The production of these videos/pictures was abhorrent. . . . Her life has changed and may never be the same. She has been uprooted from her elementary school to another one (to protect her from malicious comments). . . . She cannot go unescorted for our fear that someone else may know the situation and prey on her and she cannot live in the house she grew up in because people have been watching the house, blogging the situation. She is in weekly counseling and has begun to have night terrors sometimes 2-3 times a week. She knows that there are people viewing these and she wants to know where they are from . . . because she has a fear that they will know her if they live near us."

### B. Characteristics of Defendant

The government decided to recommend a below-guideline sentence and to allow the defendant to avoid the fifteen year mandatory minimum typically associated with production cases because of the defendant's background. This is a defendant with no criminal history whatsoever. The instant offense

represents the defendant's first contact with law enforcement. Moreover, the defendant was sexually abused as a small child and promptly admitted his wrongdoing to law enforcement.

### C. Promote Respect for the Law, Protect the Public, Punishment and Deterrence

The government's recommended sentence of 168 months' imprisonment also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The sentence this Court imposes will send a message, both to the defendant, as well as to others engaged in the practice of online solicitation of minors, that such conduct is unacceptable, and will, in fact, result in a significant period of incarceration. The recommended sentence would deter the defendant and others from attempting to lure minor victims into sexual acts.

### D. Unwarranted Sentencing Disparity

One of the statutory goals of sentencing is to avoid unwarranted disparities among similarly-situated defendants. In many other cases involving the production of child pornography images, the defendant has been charged with a violation of 18 U.S.C. § 2251(a) and subject to the 180 month mandatory minimum. Undersigned counsel has researched recent NDCA cases that involve similar circumstances to provide the Court with some relevant context.

- In *Perret*, CR-12-00390 WHA, the defendant used Facebook and Skype to coerce minor girls to undress on video and then he saved these videos to his hard drive. The defendant had no criminal history and did not distribute the videos. The defendant was sentenced to 108 months imprisonment by Judge Alsup.

- In *Hill*, CR-10-00061 JSW, the defendant persuaded a child to engage in sexually explicit conduct for the purpose of producing a child pornography video on the defendant's iPhone on March 17, 2010. The officers who arrested Hill determined that the video showed a 9-year-old girl exposing her chest and pulling down her pants and also depicted Hill exposing himself to the girl. The defendant was a first offender. He was sentenced to 180 months by Judge White.

Gonzalez should fall somewhere in between *Perret*, who did not distribute the images, and *Hill*, who had in-person contact with his victim. In light of these comparison cases, a 168 month sentence for Gonzalez seems fair and appropriate.

U.S. SENTENCING MEMORANDUM
CR 13-00098 PJH                           10

## CONCLUSION

Based upon the reasons set forth above, the United States respectfully requests that the Court impose the sentence of 168 months in custody, to be followed by ten years of Supervised Release, with a $200 special assessment.

DATED: May 22, 2014

Respectfully submitted,

MELINDA HAAG
United States Attorney


_____/s/_____
RANDY LUSKEY
Assistant United States Attorney

U.S. SENTENCING MEMORANDUM
CR 13-00098 PJH                                11